Cheshire
No. 6693

STATE OF NEW HAMPSHIRE

v.

JOHN WILLIAM ST. GERMAIN

September 30, 1974

*Warren B. Rudman,* attorney general, and *Gregory H. Smith,* attorney (*Mr. Smith* orally), for the State.

*Cristiano & Kromphold (Mr. Eric J. Kromphold, Jr.,* orally) for the defendant.

GRIMES, J.  Defendant was convicted by jury for possession of heroin. RSA ch. 318-B (Supp. 1973). He excepted to the rulings of the trial court admitting and excluding evidence and from denial of a motion to suppress evidence raising issues of the validity of his warrantless arrest, warrantless search of a car and seizure of evidence, and the validity of a warrant obtained to search the vehicle at the police station. Defendant's exceptions were reserved and transferred by *Grant,* J.

On July 3, 1971, at about 10:30 p.m., Inspector Douglas Fish was called to the Keene police station to investigate a report that one Michael Hare would be arriving in Keene carrying a supply of heroin. The inspector was told that Hare would be driving a green Pontiac with Maine registration number 360-985 and that Hare would be meeting people at an apartment located on Harmony Lane. On his way to the station Inspector Fish drove to Harmony Lane and saw the described car parked near the apartment. At the police station Inspector Fish talked with a fellow inspector and with two other people who corroborated that Mr. Hare was to have heroin with him and was to meet one Frank Torres, Jr. An independent investigation verified a statement by the informants that Torres had a prior conviction in New York for drug abuse.

Inspector Fish then consulted by telephone with the county attorney. At midnight a second check of the apartment at Harmony Lane revealed that the suspect car was missing. A couple of hours later, when checked a third time, the car had returned. At the time of this third check, Inspector Fish saw Frank Torres walking along the street. The inspector

called a police cruiser and had Torres picked up and taken to the police station for questioning. Torres appeared to be under the influence of drugs. When asked about a red inflammation on his arm, he said he had just shot some heroin from a sample he had obtained from Hare and that he had thrown the sample into some bushes when he was arrested. He also told the police that Hare and a friend (St. Germain) had driven from Maine on their way to New York with the heroin, that the heroin was of a high grade and worth around $10,000, and that Hare and St. Germain wanted Torres to help them sell it. Torres was then released on his promise that he would return to the station at noon of that day, July 4, with the sample which he had thrown away.

Torres returned at noon with the sample and reassured the police he would continue to cooperate with them. At 2:00 p.m. he returned and reported that he and Mssrs. Hare and St. Germain had made all the arrangements to go to New York to sell the heroin, that the heroin would be in the car when they left town, but that all three were broke and needed travelling money. Inspector Fish loaned him a few dollars. At 2:45 p.m., with two officers in a cruiser standing by, Inspector Fish in an unmarked car staked out the green Pontiac. The inspector noticed a person, whom he could not identify, leave the apartment and walk towards the car carrying a package. Five minutes later the car left Harmony Lane and drove past the inspector's stakeout point. From his vantage point, the inspector saw three men in the car. He recognized Torres in the back seat and he subsequently identified Hare as the driver and St. Germain as the front-seat passenger.

The suspect car was followed by Inspector Fish and, some distance back, by the marked police cruiser. At the outskirts of Keene, when it appeared the vehicle was heading out of the town toward Vermont, Inspector Fish passed the Pontiac and radioed the cruiser to stop the car and take the passengers into custody.

The Pontiac was stopped. The two uniformed policemen approached it from the rear, one on each side, and plain clothesman Fish approached it from the front. One of the officers asked Hare for his license and registration. When

Hare said he did not have them, the officer ordered the three suspects to get out of the car on the driver's side. As St. Germain slid across the front seat he took something out of the glove compartment and tucked it in the sleeve of a jacket lying on the front seat. Having been forewarned by Torres that his friends had a pistol, the police drew their weapons. The suspects were frisked, cuffed and taken into custody. Meanwhile, Inspector Fish spotted a pistol in the glove compartment, which had been left open. In taking the pistol from the glove compartment, he also found a clip for the pistol with four rounds of ammunition in it. He also seized a small plastic packet which he testified was sticking out from the sleeve of the jacket.

The three cars, three policemen with pistols drawn, and three suspects caused a small traffic jam at the intersection where the arrest took place on the 4th of July weekend. The police drove the Pontiac to the police station and tried to contact a judge for a warrant to search the car. They first tried to call the presiding justice of the Keene District Court but he was on vacation. They then called the special justice who could not be reached. To no avail they also called a probate court judge who had often presided at the district court. Finally, Charles Contas, an attorney, justice of the peace, and clerk of the Cheshire County Superior Court, issued the warrant at 5:35 p.m. on the basis of Inspector Fish's affidavit. The search of the car revealed a syringe in the pocket of the jacket and in the trunk under the spare tire a packet of white powder. The sample retrieved by Torres, the small packet of powder in the jacket, and the larger packet from the trunk all proved to be heroin.

Defendant argues first that the police did not have probable cause to arrest defendant or to seize the car. *Aguilar v. Texas,* 378 U.S. 108 (1964). Police received information from two informers who corroborated each other's information. One of the informers, Frank Torres, was a co-conspirator trusted by and working with defendant. Much of his information was independently corroborated by investigation or by surveillance of the car and apartment. Torres' condition at 2:00 a.m., his prior conviction, and the needle marks on his arm corroborated his experience with drugs. His return to the

police station at noon with a sample of the heroin and his return at 2:00 p.m. to report defendant's planned departure with the heroin made it probable that the suspects were transporting heroin. We hold that the police had probable cause to make the arrest and seizure. *United States v. Harris,* 403 U.S. 573 (1971); *State v. Comeau,* 114 N.H. 431, 321 A.2d 590 (1974); *State v. Collins,* 112 N.H. 449, 298 A.2d 742 (1972).

In the alternative, defendant argues that if probable cause existed to arrest defendant, it existed as of 1:30 a.m. on July 4; therefore, the police had ample time to obtain a warrant and could not rely on exigent circumstances to justify the seizure and search of the vehicle. This argument is faulty both as matter of logic and as applied to this case. In *State v. Dearborn,* 114 N.H. 457, 322 A.2d 924 (1974), this court noted that the failure to obtain a warrant at the "'first practicable moment'" does not foreclose justifying a warrantless search under the exigent circumstances exception. It does not appear that the police purposely delayed action awaiting exigent circumstances to arise in order to avoid getting a warrant. The police here did not know where the heroin was located until an hour before arresting the suspects. Inspector Fish testified that Torres himself did not know its location because Hare would not tell him. Thus, Hare gave Torres only a sample of the larger package. In order to meet the requirement for specificity in a search warrant (*State v. Moreau,* 113 N.H. 303, 306 A.2d 764 (1973)), the police would have had to gamble that the heroin was either in the car or the apartment. The fact that the police might have been able to get a warrant earlier did not, however, preclude them from continuing their investigation and then acting under the exigency of the circumstances when they arose. *See Cardwell v. Lewis,* 94 S. Ct. 2464 (1974). We need not rule upon the validity of the warrant to search the vehicle at the station since no warrant was required.

*Exceptions overruled.*

All concurred.