Hillsborough
No. 6524

STATE OF NEW HAMPSHIRE

v.

WILLIAM L. GREELY

August 29, 1975

*Warren B. Rudman,* attorney general, and *Gregory H. Smith,* assistant attorney general *(Mr. Smith* orally), for the State.

*Maynard, Dunn & Phillips (Mr. Roger B. Phillips* orally) for the defendant.

LAMPRON, J. Appeal by the defendant from jury verdicts of guilty of possession of marijuana in excess of one pound, in violation of RSA 318-B:26 I (c) (Supp. 1973), and of unlawful transportation of marijuana with intent to sell, in violation of RSA 318-B:26 I (a) (Supp. 1973). Defendant's exceptions to rulings of the trial court were reserved and transferred by *Batchelder*, J.

The defendant's appeal is based mainly on six grounds of error. They are the improper denial of his motions: (1) to suppress evidence obtained in a warrantless search of an automobile in which he was travelling; (2) to suppress items obtained in a search under a warrant of his residence in Rumney; (3) to separate his trial from that of a codefendant Quinn; (4) to disqualify the jury panel from which the trial jury was drawn on the basis that persons between the ages of eighteen and twenty-one were excluded; (5) to strike the testimony of a police officer identifying as marijuana substances seized in defendant's residence; and (6) to dismiss the indictments because the State failed to prove beyond a reasonable doubt the essential elements of the offenses charged.

In November 1970 the State police received information from various sources within and without New Hampshire which led it to believe that the defendant Greely was engaged in drug trafficking. As a result, the State police established a system of continuous surveillance of the defendant, his residence in Rumney, the packages delivered to or mailed from that house, and the cars arriving at and leaving the premises. They also learned from an informant who lived with Greely that he was going to California to pick up a large quantity of marijuana. On January 22, 1971, Greely and a juvenile female companion were observed leaving Logan Airport in Boston, Massachusetts, on a flight to Los Angeles, California. The State police so informed the Los Angeles police who took up surveillance of the defendant on his arrival there. As a result, they learned and notified our State police that Greely had purchased a large quantity of drugs. Shortly thereafter Los Angeles police learned that Greely was scheduled to fly back to New Hampshire on January 28, 1971, and advised the State police of the estimated time of arrival at Logan Airport and that Greely was carrying two suitcases on the plane. State police observed the arrival of defendant and his juvenile companion, and resumed their surveillance of Greely's activities.

Greely and his companion were met at Logan by Robert Quinn and another male. All four started back to New Hampshire in a car owned and driven by Quinn in which were placed two suitcases which had been picked up at the baggage retrieval department and

carried to the car by Greely. A description of the automobile, its occupants, and the two suitcases was conveyed to State police headquarters. The information was relayed to troopers in the Merrimack area who stopped the vehicle on Route 101A in the vicinity of Milford and arrested the occupants. The suitcases suspected of containing marijuana were observed, one on the rear seat and the other on the floor of the vehicle. They were removed, opened, and found to contain about 31 pounds of marijuana.

Later that evening the State police applied for and received a warrant to search Greely's residence in Rumney. They seized quantities of hashish, LSD, and marijuana, two scales, several boxes of plastic baggies, a box of cigarette papers, and $500 in cash. Greely was tried with Quinn, the driver and owner of the car, who was convicted of knowingly being present where a controlled drug was kept. The other adult passenger was charged with drug violations but did not appear for the trial.

We consider first defendant's contention that the seizure of evidence made after the arrest on the highway was the result of an illegal warrantless search. Greely contends that there was no probable cause for the arrest and no exigent circumstances which excused the absence of a warrant. Clearly the information possessed by the police, much of it obtained from direct observations by the State police and the Los Angeles police and relayed here, furnished probable cause to make the arrest and the search and seizure incident thereto. *State v. St. Germain,* 114 N.H. 608, 325 A.2d 803 (1974); *State v. Dearborn,* 114 N.H. 457, 322 A.2d 924 (1974).

We cannot accept Greely's contention that there was ample time to obtain a search warrant thus negativing the existence of exigent circumstances when the search was made at about 6:00 p.m. that evening. The State police learned about 3:30 p.m. that afternoon that defendant's plane was due to arrive at about 5:30 p.m. at Logan Airport, more than one hour's driving time away. There is "no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment." *Cardwell v. Lewis,* 417 U.S. 583, 595 (1974); *State v. Dearborn,* 114 N.H. 457, 460, 322 A.2d 924, 926 (1974). Given the time span and the logistics required to effectuate this successful apprehension of marijuana being transported by plane from California to Boston and by automobile to some undesignated place in New Hampshire with several optional routes of travel available, we hold that the State has shown that exigent circumstances existed. *State v.*

*Dearborn supra.* Defendant's motion to suppress the evidence obtained in this warrantless search was properly dismissed. *State v. Schofield,* 114 N.H. 454, 322 A.2d 603 (1974).

The affidavit of the State police officer and his accompanying testimony under oath presented to establish probable cause for a warrant to search defendant's residence in Rumney contained the following information. On May 20, 1970, in Milford, Greely and two other persons had been arrested for knowingly being in the presence of a controlled drug. During the course of their surveillance of defendant's residence, the State police observed the above two persons living there with Greely and other individuals between December 18, 1970, and January 26, 1971. Information was supplied to the applicant by another officer that an informant of his had purchased LSD from Greely in December 1970, and the applicant testified under oath before the magistrate that this informant's reliability was corroborated by a conversation between a member of the narcotics bureau, the informant, and Greely. *State v. Mandravelis,* 114 N.H. 634, 637-38, 325 A.2d 794, 796 (1974); *United States v. Ventresca,* 380 U.S. 102 (1965).

The affidavit also stated that a parcel mailed at the Rumney post office by the defendant was examined by postal inspectors on December 19, 1970, and found to contain about 10 ounces of marijuana. The affiant also recited that he had received information from the Los Angeles police that on January 6, 1971, Greely had been seen there in the company of known drug sellers. Also that on January 27, 1971, the day before the application for the warrant, the chief of police of Rumney had visited the defendant's residence and detected the odor of marijuana smoke in the house and observed cigarette papers. The applicant also recited the arrest of the defendant on that evening of January 28, 1971, in Merrimack with a large quantity of marijuana in brick form. These statements were not mere affirmations of belief and suspicion, but rather, could be found by the magistrate to establish probable cause of the presence of controlled drugs in the defendant's residence at the time the warrant was sought. *State v. Nickerson,* 114 N.H. 47, 314 A.2d 648 (1974); *State v. Comeau,* 114 N.H. 431, 321 A.2d 590 (1974); *see Aguilar v. Texas,* 378 U.S. 108 (1964); *United States v. Harris,* 403 U.S. 573 (1971). Defendant's motion to suppress the evidence obtained in the search was properly denied.

Defendant claims that as a result of the trial court's denial of his motion for a separate trial he suffered substantial prejudice from the testimony of codefendant Quinn and certain exhibits intro-

duced against the latter. He maintains that this court should review the matter retrospectively and rule that the denial of his motion in fact subjected him to such substantial prejudice as to constitute reversible error. *See People v. Burrelle*, 21 N.Y.2d 265, 234 N.E.2d 431 (1967). Quinn the owner and driver of the car in which Greely was riding when arrested, testified that he did not know marijuana was in the suitcases being transported; he denied ownership or knowledge of the existence of a pipe containing traces of marijuana found under the driver's seat of the car, of a plastic container with marijuana found in its glove compartment, and of literature relating to marijuana found on its rear seat. The pipe, container, and books were introduced as exhibits on the issue of Quinn's credibility. The trial court charged the jury: "you are to draw no inferences from these exhibits, and you may use them only and solely upon the issue of the credibility of the respondent Quinn. You are not to use these exhibits in any way concerning your deliberation in the case or cases against the respondent Greely."

Defendant relies for support of his position on the case of *Bruton v. United States*, 391 U.S. 123 (1968). He admits that "the present case does not violate the letter of the holding in *Bruton*, which involves the admission of a co-defendant's confession implicating the defendant [but] it does violate the spirit of the holding." That court has, on at least two occasions, explained its *Bruton* holding. *Dutton v. Evans*, 400 U.S. 74 (1970); *Nelson v. O'Neil*, 402 U.S. 622 (1971). In both instances it has confined its decision to the specific holding that the introduction of critical evidence against a defendant, when the evidence is not subject to cross-examination, denies him his constitutional right to confront the adverse witness.

In the present case the witness Quinn, a codefendant, took the stand and was cross-examined by Greely's counsel. Quinn's testimony trying to exculpate himself is not of the same nature as a confession by a codefendant implicating the other defendant without subjecting himself to cross-examination. The court in *Nelson v. O'Neil supra* stated that it has never extended the *Bruton* rule beyond the latter situation. Furthermore, it is to be presumed that the jury followed the instructions of the court as to the use to be made of the exhibits. *State v. Grierson*, 96 N.H. 36, 41, 69 A.2d 851, 855 (1949). We cannot rule on the record that Greely suffered an impairment of his rights which requires the setting aside of the verdicts. His exception to the denial of his motion for severance is overruled.

We consider next the denial of defendant's motion to disqualify the jury panel or array because persons between the ages of 18 to 21

were not included therein. It is agreed that the panel of jurors available for defendant's trial which began on December 6, 1971, had been chosen in December 1970 primarily from the lists of registered voters. These lists have been held to be proper sources from which prospective jurors may be obtained. *United States v. Hamling,* 481 F.2d 307 (9th Cir. 1973), *aff'd,* 418 U.S. 87 (1974); *State v. Fleury,* 114 N.H. 325, 331, 321 A.2d 108, 112 (1974). These lists were to be revised in December 1971. RSA 500:5 (1968). It has been held recently that the States are free to prescribe relevant qualifications and methods of choosing jurors "so long as it may be fairly said that the jury lists or panels are representative of the community." *Taylor v. Louisiana,* 419 U.S. 522, 538 (1975); *see State v. Thompson,* 109 N.H. 205, 247 A.2d 179 (1968).

Defendant argues that after the twenty-sixth amendment to the United States Constitution granting the right to vote to citizens 18- to 20- years of age was ratified in July 1971, their names were not included on the voting lists which were the main source of the panel of jurors available for his trial. He maintains this amounted to a systematic exclusion of a cognizable group of individuals from his jury panel in violation of his "Sixth Amendment . . . guarantee of an impartial jury trial in criminal prosecutions." *Taylor v. Louisiana,* 419 U.S. 522, 526 (1975).

"The fair cross-section [of the community] principle must have much leeway in application." *Taylor v. Louisiana, supra* at 538. After a change making a new class of potential jurors eligible for jury service a reasonable period of time should be allowed to adjust the jury lists. *Brown v. State,* 58 Wis. 2d 158, 205 N.W.2d 566, 572 (1973). The mere absence of the names of 18- to 20-year-old citizens on the lists from which the array of jurors is chosen does not render it defective unless their absence resulted from a systematic and intentional exclusion. *United States v. Olson,* 473 F.2d 686 (8th Cir.), *cert. denied,* 412 U.S. 905 (1973); *State v. Fleury,* 114 N.H. 325, 331, 321 A.2d 108, 112 (1974). On the record we hold that under the circumstances the omission of the 18- to 20-year-old citizens from the voting lists which were the main sources of the jury panel did not result in partiality or bias on the part of the jury selected for Greely's trial in violation of his right that the array be selected from a representative cross-section of the community. *Hamling v. United States,* 418 U.S. 87 (1974); *Wilkins v. State,* 270 Md. 62, 310 A.2d 39 (1973), *cert. denied,* 415 U.S. 992 (1974).

Defendant excepted to a question asked of Sergeant Campbell of the State police whether controlled drugs were located in a raid of

defendant's residence in Rumney. The witness then described the type and quantity of controlled drugs obtained without further objection. Campbell had been a member of the narcotic bureau of the State police since it had been established three years previously. The appearance of controlled drugs is usually well known to persons involved in the enforcement of drug laws. *State v. Comeau,* 114 N.H. 431, 434, 321 A.2d 590, 592 (1974). Admittedly the witness's knowledge concerning their identity lacks the scientific basis attributable to an analysis by an expert. However this goes to the weight of the testimony not to its admissibility. The trial court could properly decide that the officer's testimony would be of aid to the jury. *State v. Arsenault,* 115 N.H. 109, 111, 336 A.2d 244, 246 (1975). His exception to its admission is overruled.

Finally we turn to defendant's motion to dismiss the indictment charging him with unlawful transportation with intent to sell marijuana for lack of proof beyond a reasonable doubt of his intent to sell. RSA 318-B:26 I (a) (Supp. 1973). He asserts that there is no rational connection between the state's evidence of the quantity and estimated street value of the marijuana seized and the required evidence of his intent to sell. Quantity and value standing alone may not necessarily prove intent to sell. *Perry v. State,* 303 A.2d 658 (Del. 1973). However, these factors must be considered with the other attendant circumstances. If all of the factors and circumstances introduced in evidence are sufficient for a reasonable juror to find the inferred intent to sell beyond a reasonable doubt, the requirements of due process are satisfied and the defendant can be found guilty of an intent to sell. *Barnes v. United States,* 412 U.S. 837, 843 (1973).

The evidence before the jury consisted of more than mere possession and quantity of marijuana seized. It consisted of the following. The defendant travelled across the country to California to procure the 31 pounds of marijuana which had a street value of between $7,400 to $9,900. The defendant was apparently unemployed, and the jury did not have to believe the evidence that he had inherited a substantial sum of money. Many persons from surrounding areas would come to defendant's residence in Rumney, stay a little while, and depart. On the same evening that he was stopped in Merrimack with 31 pounds of marijuana, his residence had been searched thereafter and controlled drugs found.

Furthermore the trial court specifically charged the jury that the State had to prove beyond a reasonable doubt that Greely transported marijuana and that he transported it with the intent to sell it.

The court further instructed the jury that the amount of the marijuana in and of itself was not sufficient to show an intent to sell "but is evidence for you to consider with all the other evidence as you find it to be in this case."

We hold that on all the facts and the rational inferences which could be drawn therefrom, the jury could find beyond a reasonable doubt that Greely transported the 31 pounds of marijuana from California to New Hampshire with an intent to sell it. The motion to dismiss the indictment was properly denied. *Barnes v. United States,* 412 U.S. 837, 843 (1973); *State v. Nickerson,* 114 N.H. 47, 314 A.2d 648 (1974); *see Cupp v. Naughten,* 414 U.S. 141 (1973).

*Exceptions overruled.*

All concurred.