Keene District Court
No. 7233

STATE OF NEW HAMPSHIRE

v.

VIRGINIA GILSON

April 30, 1976

*David H. Souter,* attorney general, and *Gregory H. Smith,* assistant attorney general *(Mr. Smith* orally), for the State of New Hampshire.

*Bell & Kennedy* and *Arnold R. Falk (Mr. Falk* orally) for the defendant.

DUNCAN, J. The defendant is charged with possession and control on January 11, 1975, in Keene of a controlled drug other than a narcotic drug in violation of RSA 318-B:26 I (b) (2) (Supp. 1975). Critical evidence in support of the charge was seized as a result of a search conducted pursuant to a warrant issued by the Keene District Court *(Davis,* J.). The warrant recited that "there is probable cause for believing that marijuana, also known as cannabis sativa may be found in the possession of Michael Shields and Ginnie Gilson also in a vehicle Color Tan with NJ Registration No. IPB-884", and authorized that they be searched. As a result, a quantity of marijuana was seized from the defendant's purse. The defendant seasonably moved to suppress the evidence as the product of an unreasonable search and seizure. The motion was denied by Special Justice *(Richard J. Talbot),* whereupon the questions raised by the motion were reserved and transferred upon an agreed statement of facts in advance of trial. The complaint, the supporting affidavit, the warrant, and the return together with the agreed statement constitute the entire record. The defendant alleges that the affidavit submitted in support of the search warrant failed to establish probable cause to conduct the search.

The affidavit by John J. Byrnes, a police officer with the Keene Police Department for 15 years and "presently investigating the use and possession of marijuana", is a narrative in three paragraphs:

"On January 11th, 1975, at about 9:20 P.M., Greg Lacoste of Charles Sunoco on Winchester Street reported to the police station that he observed a male subject with a female subject, in a Brown VW with NJ reg IPB-884 at the gas station, and that he observed the male subject rolling a marijuana cigarette. That the vehicle left on RT 9 towards Bratt. Vt.

"While on cruiser patrol and on duty, patrolling zone #3, I observed the vehicle that Mr. Lacoste stated he saw with the male subject rolling the marijuana cigarette, NJ IPB-884, it was parked on Ralston street, at the Pub parking lot. I passed this information on to Sgt. Dave Robinson and we staked out the vehicle. At a little after 10:00 P.M., I observed Mr. Shields and Miss Gilson walk out

232

of the Pub and enter the NJ vehicle with the registration of NJ IPB-884. Mr. Shields was the operator and Miss Gilson was the passenger. He drove out of the parking lot and West on Winchester street. In the area of Island and Winchester street, I placed on my blue lights to stop this vehicle and it pulled into McDonalds and parked. Sgt. Dave Robinson was also on the scene to assist and we stopped both Mr. Shields and Miss Gilson for investigation regarding the information given to the police station. While removing the keys out of the vehicle, I could smell an odor like marijuana. Both people were taken to the police station and advised of their rights. Mr. Shields is a known user of drugs, marijuana, by me for some time, and a few years back he was picked up by me at the Keene High School parking lot with another subject smoking a marijuana cigarette. No court action was taken at that time. I asked them for consent to search and they refused, stating that they wanted everything legal. Both Miss Gilson and Mr. Shields were allowed to make phone calls. Miss Gilson called Mr. Bemis, Mr. Shields didn't make a phone call because he felt it wasn't necessary.

"Based on the forgoing, I have probable cause to believe that a quantity of marijuana, an illegal drug, will be found in the possession of both Mr. Michael Shields, and Miss Ginnie Gilson, on their person or in the vehicle a 1968 VW color Tan, with NJ registration, IPB-884, located on Winchester street."

The parties agree that the affidavit is a true statement of the events as they occurred that evening. However, it is not agreed that Lacoste observed Shields rolling a "marijuana" cigarette but only that he (Lacoste) so stated to the police.

The defendant first contends that the affidavit fails in that the statements of the named informant do not comport with the requirements enunciated in *State v. Mandravelis,* 114 N.H. 634, 637, 325 A.2d 794, 796 (1974). *Mandravelis* established, *inter alia,* that when information in an affidavit comes from an informant the affiant should: "state the facts received from the informer not merely his conclusions" *(See Spinelli v. United States,* 393 U.S. 410, 415-17 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114 (1964)); and "state facts from which the magistrate can determine if the informer is a credible (truthful) person." *State v. Mandravelis, supra* at 637, 325 A.2d at 796. *See also Aguilar v. Texas, supra* at 114; *State v. Nickerson,* 114 N.H. 47, 50, 314 A.2d 648, 650 (1974). These requirements are designed to ensure that the magistrate will be able to make an independent determination as to probable cause. *Giordenello v. United States,* 357 U.S. 480, 486 (1958).

In the case at hand, the affidavit contained more than "bald and unilluminating" statements by the informant, Lacoste. *Spinelli v. United States, supra* at 414. It is buttressed by the affiant's own observations on the evening in question and by his personal knowledge of Shield's prior activities. *United States v. Harris,* 403 U.S. 573, 581-83 (1971). While the affidavit was not a model against which others should be tested, a fair reading of it supports the conclusion that the defendant and her companion were probably in possession of marijuana.

The affidavit reveals that certain of the informant's statements were later corroborated by independent events. *See Draper v. United States,* 358 U.S. 307 (1959). Thus, the informant stated that earlier in the evening he had observed a man and woman in a brown Volkswagen bearing New Jersey registration IPB-884 which stopped at the service station where he was working. The fact that the police later spotted a vehicle of that description in the vicinity and that they observed a man and a woman enter the car tended to corroborate the informant's statement. Although these facts neither proved nor disproved the presence of marijuana they lent credibility to the informant's statement, limited though it was. *See State v. St. Germain,* 114 N.H. 608, 611, 325 A.2d 803, 805 (1974).

Whatever may be said concerning the quality of the informant's statement that he saw the suspect "rolling a marijuana cigarette" to support a finding of probable cause, the police had the limited right to stop the suspects for questioning. RSA 594:2; *cf. Terry v. Ohio,* 392 U.S. 1 (1968); *State v. Maynard,* 114 N.H. 525, 323 A.2d 580 (1974). The statement of the informant *(Adams v. Williams,* 407 U.S. 143, 147 (1972)) together with the affiant's personal knowledge that Shields had used marijuana in the past *(United States v. Harris,* 403 U.S. 573, 581-83 (1971)) warranted further investigation. "[I]t may be the essence of good police work to adopt an intermediate response". *Adams v. Williams, supra* at 145; *see People v. Rivera,* 14 N.Y.2d 441, 201 N.E.2d 32 (1964), *cert. denied,* 379 U.S. 978 (1965).

Having confronted the pair in the parking lot, Officer Byrnes reached into the vehicle to remove the keys and secure the vehicle and in so doing smelled marijuana. An officer with sufficient experience to recognize the odor of burning marijuana has probable cause to suspect its presence when he detects the odor within the confines of an automobile. *People v. Olson,* 175 Colo. 140, 485 P.2d 891 (1971); *see State v. Greely,* 115 N.H. 461, 468, 344 A.2d 12, 17 (1975).

The defendant contends that the removal of the keys was an unlawful intrusion and that the statement that the officer smelled an "odor like marijuana" must be discounted in testing the sufficiency of the affidavit. *Wong Sun v. United States,* 371 U.S. 471 (1963). However, the officer's action was within the range of accepted police practices which are "non-investigatory" and which involve only a minimal intrusion on privacy. *Harris v. United States,* 390 U.S. 234 (1968); *Cady v. Dombrowski,* 413 U.S. 433 (1973); *see Wyman v. James,* 400 U.S. 309 (1971); Comment, 87 Harv. L. Rev. 835, 848-53 (1974). Whether or not the officers had at that point decided to formally arrest the defendant and her companion, they had apparently decided upon temporary detention of the couple. RSA 594:2. Officer Byrnes' decision to secure the car was a reasonable course of action in the circumstances. Certainly, the officer would have been justified in holding the vehicle to await a magistrate's warrant *(Chambers v. Maroney,* 399 U.S. 42, 52 (1970)) in which case he would be justified in removing the keys. The case at bar is little different. Having justification for removing the keys from the ignition, the officer "came inadvertently across a piece of evidence incriminating the accused". *Coolidge v. New Hampshire,* 403 U.S. 443, 466 (1971). His statement was properly included in the affidavit and considered by the issuing magistrate.

Viewed in its entirety, the affidavit supports the finding of probable cause, and thus the warrant was validly issued. It is not "constitutionally significant" that the return was not sworn to *(See Cady v. Dombrowski,* 413 U.S. 433, 449 (1973)), and this omission did not require that evidence properly listed in the return be suppressed. *State v. Saide,* 114 N.H. 735, 329 A.2d 148 (1974); *United States v. Hall,* 505 F.2d 961 (3d Cir. 1974).

*Remanded.*

All concurred.