Cheshire
No. 7384

STATE OF NEW HAMPSHIRE

v.

WALTER J. LOVETT, JR.

September 30, 1976

*David H. Souter,* attorney general, and *Gregory H. Smith,* assistant attorney general, for the State.

*Devine, Millimet, Stahl & Branch* and *Farese, Farese & Chambers* and *Albert H. Russell, Jr.* [of Massachusetts] *(Mr. Russell* orally), for the defendant.

DUNCAN, J.   The defendant was indicted, tried by jury, and convicted for the offense of burglary committed on March 26, 1974. RSA 635:1. The questions of law presented by his exceptions were reserved and transferred by the Presiding Justice *(King,* J.). The defendant raises four issues in this court.

I. Jury Composition and RSA ch. 500-A

The defendant has challenged the constitutionality of RSA ch. 500-A (Supp. 1975) on the ground that it does not contain identifiable standards for selecting jurors. The constitutionality of RSA

ch. 500-A (Supp. 1975) was considered and upheld in *State v. Fleury,* 114 N.H. 325, 321 A.2d 108 (1974); *State v. Greely,* 115 N.H. 461, 344 A.2d 12 (1975); *State v. Taschler,* 116 N.H. 218, 356 A.2d 697 (1976). The defendant in the instant case has made no showing of "purposeful and systematic exclusion" of any cognizable group from the pool of prospective jurors. *State v. Fleury, supra* at 331, 321 A.2d at 112. Nor is there any indication that the venire as actually constituted in this case did not represent a fair cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 537-38 (1975); *Carter v. Jury Comm'n,* 396 U.S. 320 (1970).

II. Sufficiency of the Evidence

The defendant next alleges that the State did not produce enough evidence to establish guilt beyond a reasonable doubt. A criminal conviction may rest solely on circumstantial evidence if of a nature and quality to permit a reasonable juror to infer guilt beyond a reasonable doubt. *State v. Greely,* 115 N.H. 461, 344 A.2d 12 (1975); *State v. Nickerson,* 114 N.H. 47, 314 A.2d 648 (1974).

Viewed in a light most favorable to the State *(State v. Canney,* 112 N.H. 301, 294 A.2d 382 (1972)), the jury could find the following: At about 9:30 p.m., on the night of March 26, 1974, a house located in Harrisville and owned by Wellington Wells, was burglarized. The burglars apparently tripped an alarm which alerted Officer Alton Chamberlain, a part-time police officer in Harrisville. Arriving at the scene, he noticed in the immediate vicinity a dark station wagon with two occupants and exhibiting Massachusetts plates. The vehicle had left a clear track in fresh snow leading back to the Wells residence. Chamberlain radioed for assistance, and Deputy Sheriff Robert Bonner attempted to intercept the station wagon. When it failed to stop, a third police vehicle attempted to block the road. The station wagon forced its way around the police vehicle and a high-speed chase ensued. Finally, the station wagon came to a stop in a long driveway leading to a farmhouse. The two occupants, one of whom matched the description of the defendant, fled on foot, apparently in different directions. At first, the officers had little trouble in following the footprints in the fresh snow. However, at some point the footprints disappeared, but more footprints were found approximately 200 feet away which appeared to match the ones first followed. These led to a road where once again the prints were lost.

Searching along the embankment, the officers found a set of prints leading away from the road on the opposite embankment. Following these, they came upon the defendant after 1:00 a.m., sitting in the snow under a tree, and "panting hard". The defendant claimed he was hitchhiking from Roxbury, Massachusetts.

There was no problem in connecting the station wagon and its occupants with the burglary. The front door of the Wells residence had been kicked in, leaving a bootprint which matched the tread design of a boot later found in the station wagon. It is the defendant's contention that there is no sufficient evidence to connect him with the initial set of tracks which led away from the station wagon. He points to the two instances in which the tracks were broken, only to be picked up at a somewhat distant point. This, he argues, is enough to require the jury to find that there was reasonable doubt of his guilt.

"[T]he trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided that they can be reasonably drawn therefrom". *State v. Palumbo*, 113 N.H. 329, 330, 306 A.2d 793, 795 (1973); *State v. Canney*, 112 N.H. 301, 294 A.2d 382 (1972). The court on review must assume in favor of the verdict every fact which may fairly be deduced from the evidence. The jury in the instant case could reasonably conclude that the defendant was one of the men in the station wagon and that, in all likelihood, they were responsible for the burglary. Such a conclusion is not inconsistent with the evidence at trial, nor does it ignore any more plausible explanation consistent with innocence. The defendant's explanation that he was "hitchhiking" was not so convincing under the circumstances as to require the jury to find it to be the truth.

## III. The Requirement of an "Occupied Structure"

The defendant was convicted under RSA 635:1, which requires proof that he entered a building or occupied structure with the intention of committing a crime therein. "'Occupied structure' shall mean any structure, vehicle, boat or place adapted for overnight accommodation of persons... whether or not a person is actually present." RSA 635:1 III. The owner testified that he had stayed at the house the weekend prior to the burglary and that it was "furnished and livable." The authorities are uniform in holding that this is sufficient to constitute a building or occupied structure within the terms of the burglary statute. *State v. Timbury*, 114

N.H. 763, 329 A.2d 143 (1974); ALI, Model Penal Code, Comment to § 221.1 (Tent. Draft No. 11, 1960); Annot., 85 A.L.R. 428 (1933); R. Perkins, Criminal Law ch. 3, § 1, at 200 *et seq.* (2d ed. 1969).

IV. The Evidence Concerning the Briefcase

During the course of the chase that evening one of the occupants of the station wagon threw "something" from the vehicle. Later, one of the officers retrieved a briefcase in the vicinity which contained a number of telephone books, a note pad bearing several names and addresses, screwdrivers, and gloves. The defendant objected to introduction of the evidence, not because the contents of the case were not relevant or probative, but because there was no proof that the briefcase was the object thrown from the car and thus there was no evidence to link the briefcase with the defendant.

The defendant fails to recognize that once the State had laid some foundation to connect the briefcase to the station wagon, it was for the jury to determine whether this was in fact the object thrown from the vehicle. On the evidence that the briefcase was found at approximately the same place where some object had been discarded, the State's hypothesis that the briefcase was the object thrown from the car was a credible explanation of the facts for the jurors to resolve in their own minds. *State v. Greely,* 115 N.H. 461, 344 A.2d 12 (1975). The trial court properly admitted the briefcase and its contents in evidence. *Welch v. Bergeron,* 115 N.H. 179, 182, 337 A.2d 341, 343-44 (1975).

*Defendant's exceptions overruled.*

All concurred.