Carroll
No. 7987

## THE STATE OF NEW HAMPSHIRE

v.

## ROGER TAYLOR

December 20, 1978

*Thomas D. Rath*, attorney general, and *Anne E. Cagwin*, assistant attorney general (*Ms. Cagwin* orally), for the State.

*William D. Paine II*, of North Conway, by brief and orally, for the defendant.

DOUGLAS, J.  The defendant was convicted of burglary after a jury trial. His exceptions to the admission of bloodhound evidence, the jury instructions on the weight of this evidence, and certain statements that were made in the prosecutor's closing argument were reserved and transferred by the Trial Judge (*Brock*, J.).

On September 21, 1976, at 8:30 p.m., the alarm at the October Farm, a residence in Sandwich, was activated. Police Chief Huard arrived at the farm at 8:40 p.m. and found no one in the vicinity. He noticed, however, two sets of footprints on the dew-covered lawn near the house. He walked to the rear of the house where he found an open window with fresh pry marks and an open door. After his investigation, he secured the area and requested that a bloodhound be sent. State Trooper Semprini arrived with his bloodhound, Baron. He brought Baron to the footprints and allowed him to establish the scent. Trooper Semprini and two other police officers followed Baron as he trailed the scent. Baron followed the trail into the house, back to the lawn, and eventually into the woods. After approximately forty-five minutes of trailing, Baron's actions indicated that they were nearing the person being tracked. Trooper Semprini then directed his flashlight on the ground and the defendant and another person jumped from some brush and started to run. The defendant dropped to the ground when ordered to stop. The dog signaled that the defendant's tracks were the ones that were followed.

■ ■ We follow the majority of jurisdictions in holding that bloodhound evidence is admissible after a proper foundation has been laid. *See State v. Irick*, 291 N.C. 480, 231 S.E.2d 833 (1977); *People v. Centolella*, 61 Misc. 2d 723, 305 N.Y.S.2d 279 (1969). *See generally* Annot., 18 A.L.R.3d 1221 (1968). A proper foundation consists of testimony that the dogs are pureblood and of a stock characterized by acuteness of scent and power of discrimination; that they are trained to pursue the human track; that they have had experience tracking; that they were placed on the trail where the alleged participants are known to have been; and that they were placed within the dogs' period of efficiency. *People v. Centolella*, 61 Misc. 2d 726, 305 N.Y.S.2d 460 (1969). In the present case the State laid a proper foundation for the admission of this evidence: Trooper Semprini and Baron's original owner-trainer testified that Baron was a purebred, trained by an experienced trainer, had successfully followed scores of tracks, and had lived and worked with Trooper Semprini over a period of time. The record shows that Trooper Semprini was carefully trained in the techniques of bloodhound tracking and that Baron was brought to the scene of the crime four hours after the alarm was tripped. The evidence also indicates that the night was particularly good for trailing because of the dew. Finally, the trial testimony shows that Baron picked up the scent near the house, close to the pried open window, and he followed the tracks into the house and then without interruption, to the defendant.

■ ■ The defendant next contends that even if the bloodhound evidence is admissible, the State failed to prove all the elements of burglary. He argues that there is no evidence of intent to commit a crime once in the building, no evidence of the entry, and no evidence of when the crime occurred. He further argues that the State relied solely on the bloodhound evidence without any corroboration to prove burglary. We disagree. At trial, evidence was introduced as to each element of burglary. Each element proved by bloodhound evidence was sufficiently corroborated by other evidence. The jury could infer the intent to commit a crime within the building from the fact that the defendant fled from hiding when discovered by Baron. *State v. Reed*, 114 N.H. 377, 379, 321 A.2d 581, 583 (1974). The tripping of the alarm provides evidence of the time of entry. The pry marks around the window, the open rear door, and the fact that Baron entered the house support the inference that the defendant entered the house. "The trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided that they can reasonably be drawn

therefrom." *State v. Lovett*, 116 N.H. 571, 573, 364 A.2d 880, 882 (1976); *State v. Palumbo*, 113 N.H. 329, 330, 306 A.2d 793, 795 (1973). On review of a motion to set aside a verdict, this court must assume every fact in favor of the verdict. *State v. Lovett supra.* Based on the evidence and all rational inferences from the evidence, the jury could find beyond a reasonable doubt that the defendant was guilty. *See State v. Greely*, 115 N.H. 461, 469, 344 A.2d 12, 18 (1975).

■ ■   The trial court should instruct the jury as to the proper weight of bloodhound evidence. These instructions should in substance inform the jury that bloodhound evidence must be viewed with caution; that it must be considered with all other testimony in the case; and that, in the absence of some other evidence of guilt, it does not warrant conviction. *See People v. Centolella*, 61 Misc. 2d 723, 305 N.Y.S.2d 279 (1969). In the present case, the jury was instructed that "while the evidence provided by the bloodhound is evidence which may be considered by you in your deliberations, it is not in and of itself evidence that a crime was actually committed." This instruction adequately informed the jury as to the weight accorded to bloodhound evidence.

■ ■   Finally the defendant argues that he was materially prejudiced by the prosecutor's closing argument in which the prosecutor asked the jury to form their own conjecture as to why the defendant was in the woods at 1:00 a.m. The defendant contends that this comment abrogated his presumption of innocence for it shifted the burden of proof to him to explain his conduct. The unexplained behavior of the defendant is a proper subject for comment by the prosecutor in his closing argument. *See State v. Richard*, 109 N.H. 322, 323, 251 A.2d 326, 327, 328 (1969). The trial judge offered to give a curative instruction concerning the defendant's failure to testify, and the offer was rejected by the defendant. *See State v. Fowler*, 110 N.H. 110, 112, 113, 261 A.2d 429, 430, 431 (1970). Therefore, the defendant cannot now complain that he was unduly prejudiced by the comment.

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.