Merrimack
No. 78-233

THE STATE OF NEW HAMPSHIRE

v.

STEVEN C. NOEL

July 11, 1979

*Thomas D. Rath*, attorney general, *Paul W. Hodes*, attorney, by brief, for the State.

*Glenn G. Geiger, Jr.*, of Penacook, by brief, for the defendant.

LAMPRON, C.J.    The defendant was indicted for burglary. RSA 635:1. Trial by jury resulted in a guilty verdict. The defendant excepted to certain rulings of the court during the course of the proceeding and a reserved case was prepared and transferred by *DiClerico*, J. Specifically, the defendant argues that any statements made after he was given the *Miranda* warnings were inadmissible because he was mentally unable to understand his rights and incapable of giving a knowing, intelligent, voluntary waiver. The

defendant also contends that the trial court erred in failing to direct a verdict in his favor. We overrule defendant's exceptions.

On the morning of September 5, 1976, at about 2:45 a.m., the Concord police were dispatched to the Tap Room, a restaurant on Loudon Road, to investigate a possible burglary. Sergeant Bennett and officers Davis and Reilly arrived at the scene. Sergeant Bennett investigated the back of the premises while the other two officers covered the front. In the back of the restaurant, there was a fenced area that contained an outdoor bar. Sergeant Bennett entered this area with a flashlight and a drawn gun, and with a beam of light noticed an arm of a person concealed behind the wooden bar. The sergeant called for the suspect to come out, and after the fourth call a person later identified as the defendant came out. Three tools were found at the place where the defendant was hiding. The tools belonged to the owner of the restaurant and they were kept inside the building.

After the defendant was handcuffed, Bennett patted him down and found only two cents. The other two officers then proceeded to investigate the interior of the building. They gained entry through a window space on a side door. The plexiglass that covered the opening had been removed and was lying nearby. Inside the building, the officers found that the jukebox and pinball machine had been broken into and that the coin boxes had been removed and were lying on the floor. There was money in the open drawer of a cash register.

At trial the defendant put forth a defense of intoxication. Specifically, he alleged that due to the influence of drugs and alcohol he was incapable of forming the requisite mental state to be found guilty of RSA 635:1 (Burglary). That is, he did not enter with a purpose to commit the crime of theft therein. *Id.* The defendant testified on his own behalf in part as follows. He had been taking various drugs and alcohol for two days preceding his arrest. On the evening of his arrest, he attended a party where he claimed that he was given a drink in which somebody slipped a hallucinogenic drug, LSD. He left the party and, after hitchhiking, he found himself on Loudon Road across from the Tap Room. A sudden thunderstorm passed through the area and because of the effect of the drugs, he became frightened of the thunder and lightning. To escape the storm, he sought shelter in the restaurant. The defendant further testified that, while inside the restaurant, he broke into the jukebox and the pinball machine to obtain money to play the latter. When he noticed the police, he again became afraid, dove out the side window and hid under the wooden bar where he was later apprehended. A psychiatrist, Dr. Lian O'Brien, testified for the defendant. He stated

that the defendant's testimony and description of the events was consistent with those of a person who was hallucinating due to the effect of drugs. Trial by jury resulted in a verdict of guilty.

### I. *Understanding of Miranda Rights*

When the defendant was apprehended by Sergeant Bennett, he was given his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436 (1966), and was then asked by the arresting officer if he had anything to say. Without affirmatively acknowledging that he understood his rights, defendant responded by asking how the police knew he was inside the building and if someone had called the station. This statement was introduced at trial through the testimony of the arresting officer. He was then taken to the police station where he was again read his *Miranda* rights and asked to sign a written waiver form, which he did in fact sign. Another statement was given. This statement, however, was suppressed because the trial court found that too much time had elapsed between the giving of the rights and the making of the statement. This lapse, the trial court concluded, required that the *Miranda* warnings be given again. The only statement in issue before this court is the statement made at the scene of the arrest before the defendant signed the waiver form. There is no dispute concerning the accuracy of the *Miranda* warnings as verbally recited by the arresting officer. Rather, the controversy concerns whether the accused was capable of understanding his rights against self-incrimination and the right to have counsel present during any questioning. *Miranda v. Arizona*, 384 U.S. 436 (1966).

Before the State can introduce a defendant's statement into evidence it must prove beyond a reasonable doubt that defendant understood his *Miranda* rights. *State v. Gullick*, 118 N.H. 912, 396 A.2d 554 (1978); *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977). Unless an accused understands his rights, there can be no voluntary, intelligent, and knowing waiver. *See United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976). The defendant argues that the State has not satisfied this burden because he made no affirmative acknowledgment that he actually understood his rights. *State v. Vargus*, 373 A.2d 150, 154 (R.I. 1977), and that his drug intoxication made it impossible for him to understand his rights. *Pierce v. Cardwell*, 572 F.2d 1339, 1341 (9th Cir. 1978).

One's mental and physical condition are crucial in determining whether a knowing, voluntary, and intelligent waiver occurred.

*Pierce v. Cardwell,* 572 F.2d at 1342. At the suppression hearing there was conflicting testimony concerning the defendant's sobriety. The defendant testified that he repeatedly consumed drugs and alcohol on the day of the arrest. Because of the effect of drugs, he stated that he could not remember talking to the police at the scene of the arrest. The arresting officer testified that the defendant appeared to be sober, despite smelling of a trace of alcohol. The officer also testified that even though he didn't remember whether defendant had actually acknowledged an understanding of the rights, the officer, nevertheless, received the clear impression that defendant understood his rights. In addition, other officers testified that when the defendant was brought to the station house he appeared to be intelligent and aware of the circumstances of his arrest.

An express written or oral statement of a waiver of the *Miranda* rights is not invariably required under the United States Constitution. *North Carolina v. Butler,* 99 S. Ct. 1755 (1979). Since an express waiver is not always constitutionally required, neither should an explicit statement that an accused actually understands the *Miranda* rights be required. Whether a person in fact knowingly and voluntarily waived the *Miranda* rights is to be determined from the totality of the circumstances. *North Carolina v. Butler,* 99 S. Ct. 1755, 1757 (1979). *See generally State v. Gullick,* 118 N.H. 912, 396 A.2d 554 (1978). Therefore the arresting officer's failure to recall whether defendant affirmatively acknowledged an understanding of the *Miranda* rights is not determinative. The crucial issue is whether the totality of the circumstances demonstrates that defendant was mentally capable of actually comprehending his rights and voluntarily waived them.

The suppression hearing was heard and decided before our decision in *State v. Gullick,* 118 N.H. 912, 396 A.2d 554 (1978), in which we required a trial court at a suppression hearing on the issue of voluntariness to make an express finding of waiver. Nevertheless, the trial court "applying the reasonable doubt standard" made an express finding and ruling that the defendant understood "those [*Miranda*] warnings" given by the arresting officer. Accordingly, the court refused to suppress the statement. In the present case the witnesses' testimony was conflicting. Therefore, the trial judge had the responsibility of assessing their credibility. From our review of the record of the suppression hearing, we conclude that there was sufficient evidence to allow the judge to determine that the State

sustained its burden of proving beyond a reasonable doubt that defendant was capable of understanding, and did understand, his rights and thus voluntarily waived them. *See United States v. Oaxaca,* 569 F.2d 518 (9th Cir. 1978); *United States ex rel. Cooper v. Warden Illinois State Penitentiary,* 566 F.2d 28 (7th Cir. 1977). Consequently, the superior court finding on this matter will not be overturned.

II. *Motion for Directed Verdict*

The defendant was convicted of burglary. RSA 635:1 I provides that, "A person is guilty of burglary if he enters a building or occupied structure ... with purpose to commit a crime therein." The defendant was charged with entering a building to commit a crime of theft. RSA ch. 637. The defendant argues that he did not have the requisite mental state to commit the crime of theft when he entered the Tap Room. In particular, he contends that the State relied on an insufficient amount of circumstantial evidence to prove his mental state, and that his intoxication prevented him from forming the required mental intent. The defendant asserts, therefore, that the trial court erred in failing to direct a verdict in his favor.

In reviewing a denial of "a directed verdict for the defendant, the evidence must be construed most favorably to the State." *State v. Breest,* 116 N.H. 734, 741, 367 A.2d 1320, 1326 (1976). In addition, the State is entitled to all reasonable inferences that arise from the evidence. *State v. Berry,* 117 N.H. 352, 355, 373 A.2d 355, 357 (1977). "Although the State must establish guilt beyond a reasonable doubt on all the essential elements, it may rely on circumstantial, rather than direct, evidence." *State v. Goodwin,* 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978). This court does not distinguish between circumstantial and direct evidence. *See State v. Lovett,* 116 N.H. 571, 572, 364 A.2d 880, 881 (1976). Indeed, where a person's mental intent is in question, "[b]y the nature of things . . . [it] can be established only by circumstantial evidence." 1 F. WHARTON, CRIMINAL EVIDENCE § 6, at 5 (C. Torcia 13th ed. 1972).

The evidence shows that the defendant was suspiciously hiding outside the restaurant when he was apprehended by the police. *See State v. Reed,* 114 N.H. 377, 321 A.2d 581 (1974). Beside him were a number of tools that were taken from inside the restaurant. The evidence also shows that a sheet of plexiglass had been removed from a side door. The inside of the building was ransacked; the machines were broken open and the money was removed and was in a container on the floor. The defendant argues that because he had no money on his

person when he was apprehended he obviously had no intent to steal. A reasonable jury could infer, however, that defendant was interrupted by the police while he was in the process of committing the crime.

■ ■ The defendant asserts that his drug-induced intoxication prevented him from having the required mental state. Intoxication, whether by drugs or alcohol, may negate the existence of specific intent. *State v. Caldrain*, 115 N.H. 390, 342 A.2d 628 (1975); RSA 626:4. A psychiatrist testified for the defense that defendant's recollection of the events of that night was consistent with the premise that the defendant was under the influence of drugs. The arresting officers, however, testified that they observed the defendant to be sober and in a coherent state. "It is for the jury to resolve whether intoxication negates the element of intent." *State v. Goodwin*, 118 N.H. 862, 867, 395 A.2d 1234, 1237 (1978). Based on all the evidence and its rational inferences, we hold that a reasonable jury could have found beyond a reasonable doubt that defendant entered the premises purposely to deprive the owner of his property. RSA 637:2 III; RSA 637:3 I; *see* R. PERKINS, CRIMINAL LAW 905 (2d ed. 1969). The trial court was therefore correct in denying the defendant's motion for a directed verdict.

*Exceptions overruled.*

All concurred.