**Benjie F. JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 82 153 CR.**

Court of Appeals of Texas, Beaumont.

Nov. 30, 1983.

Discretionary Review Refused April 25, 1984.

Edward J Tracy, Newton, for appellant.

Guy James Gray, Criminal Dist. Atty., Jasper, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was convicted by a jury for the offense of aggravated robbery and the trial court assessed his punishment at thirty years confinement.

Appellant's first and second grounds of error challenge the sufficiency of the evidence to sustain the conviction.

The evidence reveals that just prior to daylight, at approximately 6:25 o'clock on the morning of February 2, 1982, Malcolm Durdin arrived at his small, semi-rural grocery store in Jasper County. When Durdin arrived, a man jumped from a hiding place in front of the store and immediately fired five shots at Durdin. In a successful effort to avoid injury, Durdin threw his thermos bottle, his money bag, rocks and sticks at the assailant. Durdin was only able to identify his assailant as being "around 5'7" and weighing around 175 pounds." The robber fled the scene in a northeasterly direction from the store into and through a nearby wooded area.

The Sheriff of Jasper County arrived at the scene of the robbery within thirty minutes of the robbery and, with the assistance of the Police Department of the City of Jasper and others who had gathered at the scene, proceeded to "station every available person—probably forty to forty-five people—around the entire wooded area to the north of Mr. Durdin's store to protect the wooded area or all of the area inside of roads which completely surrounded probably a two by two mile square area to prevent anyone entering this area or, of course, anyone from coming out." The officers, and others, remained in position within visual contact of each other until appellant was arrested.

Tracking dogs were summoned from the Ellis Unit of the Texas Department of Corrections. The dogs arrived at approximately 10:30 o'clock of that morning and were "cast" for and struck a trail. At the end of that trail, the officers found and arrested appellant.

Testimony was given in detail as to the training and "expertise" of the dogs. The tracking dogs are owned and trained by the Ellis Unit of the Texas Department of Corrections. The dogs are bred for, carefully trained and exclusively used for trailing suspects. The men who handle the dogs have extensive experience in working the dogs and performing tasks with these dogs on a full-time daily basis. No objection to the evidence of the tracking dogs has been made or urged on this appeal.

The witness, Victor C. Graham, Dog Sergeant, directed the dogs in the wooded area immediately behind Durdin's store where they picked up a trail in the woods at a point where the robber was seen to enter. The dogs followed the trail through the woods and Graham followed on horseback. Graham testified that he observed a set of foot tracks along the trail that the dogs were following and that these foot tracks had a "rounded off toe". The trail that the dogs followed, as well as Graham, avoided open or clear areas in favor of the relative cover provided by the timber terrain. Graham testified that the dogs followed the trail directly without interruption to the place where appellant was found.

Officer Stanley Christopher was positioned at an area where the dogs came out of the woods and up to a barn with a van type trailer inside. Appellant was inside the trailer. Appellant was not wearing a shirt or jacket, his trousers were damp, and he was wearing blunt, round-toed, low-quarter shoes. The weather was drizzling rain and chilly to the point of requiring a jacket or windbreaker. Appellant's upper body had numerous superficial fresh scratches consistent with rapid flight through the woods without a shirt. His pants and shoes were damp. He was stuttering, his voice was breaking, and he appeared to be very nervous at the time he was found.

The owner of the trailer did not know appellant and had not given appellant or any other person permission to be in the trailer. It was further shown by testimony that appellant had been to Durdin's store on two or three occasions prior to the robbery. On at least one occasion shortly before the robbery, appellant had been to Durdin's store just before daylight. He had also attempted to borrow money from Durdin just a few days before the robbery.

■ We agree with appellant's assertion that appellant's conviction was based upon circumstantial evidence, and a conviction based upon such evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. *Wilson v. State*, (Tex.Crim.App.1983), No. 072–82, July 20, 1983; *Faulk v. State*, 608 S.W.2d 625 (Tex.Crim.App.1980). Proof which amounts only to strong suspicion or mere probability is insufficient. *Ford v. State*, 571 S.W.2d 924 (Tex.Crim.App.1978). However, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Faulk v. State*, *supra*.

In the recently decided case of *Wilson v. State*, *supra*, our Court of Criminal Appeals states clearly that "circumstantial evidence should not be tested by an *ultimate* 'standard for review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" The Court further retains the "utilitarian 'exclusion of outstanding reasonable hypotheses' analysis for *applying* the above 'standard for review' in circumstantial evidence cases." The Court further holds that "in actually assessing the evidence, no method *other than* a process of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established [defendant's] guilt beyond a reasonable doubt.... Stated in the converse, if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding."

■ Under the appropriate standard for review, as stated in *Wilson v. State*, *supra*, the evidence in this case, taken as a whole,

would not support any reasonable or rational conclusion other than that the appellant committed the offense in question, and that such evidence established his guilt beyond a reasonable doubt. Accordingly, the grounds of error attacking the sufficiency of the evidence to support the conviction are overruled.

By his fourth ground, appellant contends the indictment is defective in that it "failed to allege that appellant had intent to obtain and maintain control of any property."

The indictment alleges:

"... while in the course of committing theft and with intent to appropriate property of Malcolm Durdin, to-wit: namely, U.S. Currency, without the effective consent of the said Malcolm Durdin and with intent to deprive the said Malcolm Durdin of said property, did then and there by using exhibiting a deadly weapon, to-wit: a gun, intentionally and knowingly place Malcolm Durdin in fear of imminent bodily injury ...."

The elements of robbery are defined by *TEX.PENAL CODE ANN. sec. 29.02* (Vernon 1974), wherein it is provided that a person commits an offense if in the course of committing theft as defined in Chapter 31 of the Penal Code he with the intent to obtain or maintain control of the property either intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

■ Appellant did not file a motion to quash the indictment upon grounds urged herein and we must therefore consider this ground of error as an attack upon the indictment as being fundamentally defective.

Appellant relies upon *Ex parte Snelson,* 601 S.W.2d 358 (Tex.Crim.App.1980), as authority for holding the indictment in the case at bar to be fundamentally defective. The Court, in *Snelson,* states that the indictment there being considered (in a postconviction proceeding) wholly failed to allege that the petitioner had the " 'intent to obtain and maintain control of the property' " and since such an allegation, a necessary element of the offense, was not made in the indictment, it was insufficient to allege the offense. However, in *Snelson,* there is no indication that any other allegation was made in that indictment that would be sufficient to allege an intent to obtain and maintain control of the property. There is an allegation in the indictment in our case to show such an intent.

The indictment alleges that appellant, while in the course of committing theft had the "intent to appropriate property" of the complainant and the "intent to deprive the said [owner] of said property ...." The term "appropriate" is defined by *TEX.PENAL CODE ANN. sec. 31.01(5)(B)* (Vernon Supp.1982–1983) as "to acquire or otherwise exercise control over property other than real property." The allegation to appropriate—meaning to acquire or exercise control of property—comes within the ambit of *TEX.CODE CRIM.PROC.ANN. art. 21.17* (Vernon 1966) which provides:

"Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

There is no material difference between the use of the word "appropriate", as used in the indictment, and the words "obtain or maintain control of the property", as stated in *TEX.PENAL CODE ANN. sec. 29.02.*

■ In construing indictments, the context and subject matter in which the words are employed should be taken into consideration. *Butler v. State,* 551 S.W.2d 412 (Tex.Crim.App.1977). When construed as a whole, the indictment in the case at bar clearly stated and apprised appellant that he was charged with having the intent to obtain or maintain control of the property when the terms "appropriate" and "intent to deprive the said [owner] of said property" were alleged. See and compare *Nixon v. State,* 572 S.W.2d 699 (Tex.Crim. App.1978). Even though inarticulately

drawn, the indictment is not fundamentally defective. This ground is overruled.

Appellant contends, by his third ground, that the indictment is "fatally defective in that it does not state whether Appellant is accused of using, or merely exhibiting, a weapon. It does not give fair notice of the alleged offense ...."

The instant indictment alleges all the constituent elements of the offense of aggravated robbery. *TEX.PENAL CODE ANN. sec. 29.03* (Vernon 1974) provides, as one element of the offense, that the accused "uses or exhibits a deadly weapon." The indictment alleges appellant committed the offense by "using exhibiting a deadly weapon." Appellant contends the omission of the word "or" between the words "using" and "exhibiting" results in a failure to give him fair notice of the charge made against him, and is therefore fundamentally defective. We do not agree.

The essential element of aggravated robbery, about which complaint is made, may be alleged and proven by alleging and proving that appellant either "used" or "exhibited" a deadly weapon or by committing both acts. By the use of the words "using exhibiting" there was placed a greater burden on the State and hence was more favorable to appellant. We hold this indictment is not fundamentally defective.

Moreover, the objection now urged for the first time complains only of insufficient notice of the charges against him.

Complaints which relate to insufficient notice rather than to a jurisdictional defect should be raised by a motion to quash. In the absence of such a motion, a non-jurisdictional defect will not be considered for the first time on appeal. *Clark v. State*, 577 S.W.2d 238 (Tex.Crim.App. 1979); *Hughes v. State*, 561 S.W.2d 8 (Tex. Crim.App.1978); *Terry v. State*, 517 S.W.2d 554 (Tex.Crim.App.1975). This ground is overruled.

The judgment is Affirmed.

Affirmed.