■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD GANGLER, Appellant. [643 NYS2d 839] —Judgment unanimously affirmed. Memorandum: Defendant was convicted following a jury trial of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, kidnapping in the second degree and two counts of unauthorized use of a motor vehicle. The charges arose from the abduction and shooting of a man who was dating defendant's former girlfriend.

Evidence that police bloodhounds tracked a scent from inside the victim's vehicle to defendant, while he was being questioned at the Sheriff's Office, was properly admitted into evidence. Bloodhound tracking evidence is admissible on the issue of identity if the proper foundation is laid and the jury is given cautionary instructions (*see, People v Muggelberg,* 132 AD2d 988, *lv denied* 70 NY2d 958, citing *People v Centolella,* 61 Misc 2d 726; *cf., People v Wilder,* 186 AD2d 1069, *lv denied* 81 NY2d

767). We reject defendant's argument that the use of a bloodhound to track a perpetrator is a search within the meaning of the Fourth Amendment (*see, People v Price,* 54 NY2d 557, 563). Defendant's reliance upon *People v Dunn* (77 NY2d 19, *cert denied* 501 US 1219) is misplaced. That case involved the use of dogs to detect the presence of drugs inside a person's home while here, defendant was not in his home, but in a public place. Defendant's reliance upon *Horton v Goose Creek Ind. School Dist.* (690 F2d 470, *reh denied* 693 F2d 524, *cert denied* 463 US 1207) is likewise misplaced. In *Horton,* drug-sniffing dogs were used inside a school building and were allowed to walk through the aisles of classrooms, even while students were seated at desks taking exams, sniffing each student in turn, placing their noses directly upon the students and engaging in excited behavior if drugs were detected. There is no evidence of any such intrusive behavior here.

Even assuming, arguendo, that the use of a bloodhound to track the scent of a perpetrator is a search, we conclude that the degree of intrusion is so minimal that the procedure may be utilized based upon reasonable suspicion (*see, People v Dunn, supra,* at 26). In our view, at the time the police investigating the kidnapping and shooting of the victim used bloodhounds, they had reasonable suspicion to believe that defendant was involved in those crimes.

We reject defendant's alternative argument that the bloodhound tracking evidence should be suppressed as the fruit of an illegal detention. The record supports Supreme Court's conclusion that defendant was not in custody at the Sheriff's Office despite the failure of the deputies to drive defendant home immediately after questioning ceased. The delay was minimal and there is no evidence that defendant was not free to leave at any time.

The record supports the court's conclusion following a *Wade* hearing that a convenience store clerk had an independent basis for her in-court identification of defendant. The clerk testified at the *Wade* hearing that she had given police a description before they showed her a photograph of defendant, whom she identified as a customer on the evening of the abduction and shooting. She testified that her view of the customer inside the well-lit store was unobstructed for over a minute and that, as she rang up his purchases, he stood directly across the counter, only two feet away from her. That testimony is sufficient to demonstrate that the clerk had an independent basis for her identification (*see, People v Rodriquez,* 137 AD2d 847). The fact that the witness subsequently was unable to

select defendant from a photograph of a lineup when she testified before the Grand Jury goes to the weight that should be accorded her in-court identification, not its admissibility (*see, People v Diaz,* 213 AD2d 353, *lv denied* 86 NY2d 781; *People v Buchanon,* 186 AD2d 864, 866, *lv denied* 81 NY2d 785, 882).

We reject defendant's contention that the kidnapping charge merged into the attempted murder and assault charges. The victim testified at trial that, as he was getting into his truck, defendant entered the vehicle from the passenger side and threatened to blow his head off. Defendant forced the victim at gunpoint to drive for over an hour, a distance of over 50 miles, until they arrived at a remote area. Once there, defendant forced the victim at gunpoint to walk up a hill, where defendant shot him in the back of the head and left him for dead. The lengthy abduction of the victim at gunpoint was not a minimal intrusion necessary and integral to the attempted murder and assault, nor did it occur essentially simultaneous with those crimes. The asportation of the victim a distance of over 50 miles can hardly be considered minimal. In our view, this is precisely the type of conduct that the Legislature intended to punish separately (*see, People v Gonzalez,* 80 NY2d 146, 152-153).

We further conclude that defendant received effective assistance of counsel (*see, People v Flores,* 84 NY2d 184, 188-189) and that the verdict is not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490, 495). The court's description of reasonable doubt as a doubt for which a juror can give a "common sense reason" did not impermissibly shift the burden of proof (*cf., People v Garrett,* 207 AD2d 948). We again urge Trial Judges, however, to adhere to the standard reasonable doubt charge (*see,* 1 CJI[NY] 6.20) to avoid the recurring problems that arise in instructing a jury on reasonable doubt (*see, People v Miller,* 194 AD2d 230, 232, *lv denied* 83 NY2d 913).

Finally, given the premeditated and callous nature of defendant's actions, we decline to exercise our power to modify the sentence as a matter of discretion in the interest of justice (*see,* CPL 470.15 [6] [b]). (Appeal from Judgment of Supreme Court, Erie County, Forma, J.—Attempted Murder, 2nd Degree.) Present—Lawton, J. P., Fallon, Callahan, Doerr and Davis, JJ.