642 S.E.2d 607

**The STATE, Respondent,**

**v.**

**Gary A. WHITE, Appellant.**

**No. 4196.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2007.

Decided Jan. 16, 2007.

Rehearing Denied March 22, 2007.

366

Assistant Appellant Defender Aileen P. Clare, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., and Solicitor Warren B. Giese, of Columbia, for Respondent.

ANDERSON, J.:

Gary A. White appeals his convictions for kidnapping and two counts of armed robbery on the grounds: (1) the trial court erred in admitting the testimony of State's expert witness, a dog handler, without establishing the underlying

scientific reliability of dog tracking; and (2) newly discovered evidence entitles White to a new trial. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

In the early morning hours of April 19, 2004, two men entered the Circle K Convenience Store on the corner of Garners Ferry Road and Old Woodlands Road in Columbia, South Carolina, where the store manager, Gwen Anthony (Anthony), was working the night shift. One of the men, Gary White (White), wore a mask and carried a gun. White approached Anthony, grasped her around her neck with his arm, and held the gun to her head. The other man removed items from Anthony's purse, emptied cash out of the register, and took lottery tickets along with an eighteen (18)-count case of beer. White held Anthony with the gun to her head the entire time the other man moved through the store taking items. However, at one point, Anthony suspected White had passed out for a few seconds, because his head fell onto her shoulder and the gun dropped. She smelled alcohol on his breath. While White dozed, Anthony had an opportunity to observe his clothes and to see the gun. The other man shouted at him and White awoke. As they exited the store, White forced Anthony outside, still holding her in his grip with the gun to her head.

White released Anthony and fled toward the east side of the store, following the other perpetrator in the direction of Old Woodlands Road. At the same time, Officer Rouppasong drove into the Circle K parking lot, and Anthony alerted him to the fleeing robbers. Officer Rouppasong saw one suspect running from the parking lot, pursued him, and called for back up. Following the suspect around the corner of the store, Rouppasong observed a parked vehicle with the headlights on. The suspect he had seen running from the parking lot exited the car from the passenger side and ran into the neighborhood; the driver remained in the vehicle. When his backup arrived Rouppasong approached the vehicle, apprehended the driver, and secured the car. Items that were stolen from Anthony and the Circle K were found in the vehicle.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Back-up officers, including Officer Gunter of the K9 unit, arrived within several minutes. Gunter began tracking with his dog approximately thirty minutes after the officers set up the perimeter. The tracking started from the location where the suspect ran from the passenger side of the vehicle and ended with the discovery of the suspect lying on the ground under some bushes. The suspect was holding a gun but appeared to be asleep.

The State moved to have Gunter qualified as an expert in K9 tracking. Gunter testified he was a Senior Master K9 Handler, which is the highest level of K9 handling that can be acquired. Aurie, Gunter's dog, is a German shepherd descended from a working bloodline of known police and military dogs. Gunter stated he trained with Aurie weekly, and they had probably run a total of 750 tracks throughout the dog's career. Yearly, they met the standards to qualify with the American Association of K9 Trainers. Gunter had been with the K9 unit for approximately fourteen years, and Aurie had been with Gunter for eight years, since he was a six-month-old puppy. The dog's training was primarily for tracking lost or missing people, rather than for sniffing for drugs or other contraband.

Gunter confirmed he had been qualified previously as an expert witness in Richland County. He professed that Aurie was very reliable. The trial court found Gunter qualified as an expert in the field of K9 tracking and handling and instructed the jury that Gunter could offer opinions in his areas of expertise. White objected to admission of dog tracking evidence on the ground it did not meet standards set forth in *State v. Jones* concerning scientific evidence, and it was not reliable, relevant, and helpful to the jury.

The jury found White guilty of the kidnapping and two armed robbery charges. White then moved for a new trial on the ground the dog tracking testimony did not meet the reliability standard required. The court denied the motion, finding Gunter's testimony admissible. White was sentenced to concurrent terms of life imprisonment without parole.

During the pendency of this appeal, witness Anthony Morris issued a written statement retracting his trial testimony. Subsequently, White moved for a new trial or, alternatively,

for remand to the trial court for a hearing on newly discovered evidence. This court denied White's motion.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 625 S.E.2d 216 (2006); *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Wood,* 362 S.C. 520, 608 S.E.2d 435 (Ct.App.2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000); *State v. Patterson,* 367 S.C. 219, 625 S.E.2d 239 (Ct.App.2006); *State v. Landis,* 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004). This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson,* 345 S.C. at 1, 545 S.E.2d at 827; *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

On appeal, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Douglas,* 367 S.C. 498, 626 S.E.2d 59 (Ct.App.2006) *cert. pending; State v. Walker,* 366 S.C. 643, 623 S.E.2d 122 (Ct.App.2005). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Fields v. Regional Med. Ctr. Orangeburg,* 363 S.C. 19, 609 S.E.2d 506 (2005); *Renney v. Dobbs House, Inc.,* 275 S.C. 562, 274 S.E.2d 290 (1981); *see also Simon v. Flowers,* 231 S.C. 545, 550, 99 S.E.2d 391, 393–94 (1957) (" '[E]rror at law' exists: (1) when the circuit judge, in issuing [the order], was controlled by some error of law ... or (2) where the order, based upon factual, as distinguished from legal, considerations, is without adequate evidentiary support."); *McSween v. Windham,* 77 S.C. 223, 226, 57 S.E. 847, 848 (1907) ("[T]he determination of the court will not be interfered with, unless there is an abuse of discretion, or unless the exercise of discretion was controlled by some error of law."). A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion when the ruling is manifestly arbitrary, unreason-

able, or unfair. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509; *Means v. Gates,* 348 S.C. 161, 558 S.E.2d 921 (Ct.App.2001).

## *LAW/ANALYSIS*

## I. Admission of Expert Testimony

White contends the trial court erred in admitting the State's expert witness testimony about dog tracking without requiring the State to establish the underlying reliability of dog tracking as a scientific or technical field. We disagree.

## A. Qualification of Expert Witness

■ The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion. *Fields v. Regional Med. Ctr. Orangeburg,* 363 S.C. 19, 609 S.E.2d 506 (2005); *State v. Myers,* 301 S.C. 251, 391 S.E.2d 551 (1990); *State v. Douglas,* 367 S.C. 498, 626 S.E.2d 59 (Ct.App.2006) *cert. pending; State v. Harris,* 318 S.C. 178, 456 S.E.2d 433 (Ct.App.1995); *see also Prince v. Associated Petroleum Carriers,* 262 S.C. 358, 365, 204 S.E.2d 575, 579 (1974) ("Whether a witness has qualified as an expert, and whether his opinion is admissible on a fact in issue, are matters resting largely in the discretion of the trial judge."). The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion. *State v. Myers,* 359 S.C. 40, 596 S.E.2d 488 (2004); *Mizell v. Glover,* 351 S.C. 392, 570 S.E.2d 176 (2002); *State v. Grubbs,* 353 S.C. 374, 577 S.E.2d 493 (Ct.App.2003); *State v. Henry,* 329 S.C. 266, 495 S.E.2d 463 (Ct.App.1997); *see also Jenkins v. E.L. Long Motor Lines, Inc.,* 233 S.C. 87, 94, 103 S.E.2d 523, 527 (1958) ("It was for the trial [c]ourt to say whether the inquiry was one upon which expert testimony was proper, and its ruling thereon will not be disturbed unless its [sic] appears that there has been an abuse of discretion.").

■ To warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both the error of the ruling and the resulting prejudice. *Vaught v. A.O. Hardee & Sons, Inc.,* 366 S.C. 475, 623 S.E.2d 373 (2005); *Fields,* 363 S.C. at 26, 609 S.E.2d at 509; *Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997); *Ellis v. David-*

*son,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509.

*State v. Council* inculcates the Bench and Bar as to the law extant in regard to admission of scientific evidence and expert testimony. 335 S.C. 1, 515 S.E.2d 508 (1999). In 1993, the United States Supreme Court adopted new parameters for admissibility of expert testimony under Rules 702 and 703 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The *Daubert* court declared:

> Before scientific evidence is admitted, the trial judge must determine the evidence is relevant, reliable and helpful to the jury. The Court suggested four factors to consider in deciding reliability in scientific evidence cases: (1) scientific methodology; (2) peer review; (3) consideration of general acceptance; and (4) the rate of error of a particular technique.

*Council,* 335 S.C. at 19, 515 S.E.2d at 518 (*citing Daubert,* 509 U.S. at 579, 113 S.Ct. at 2786, 125 L.Ed.2d at 469). If the evidence is reliable and relevant, the trial judge should determine if the probative value of the evidence is outweighed by its prejudicial effect. *Id.* Accordingly, the South Carolina Supreme Court instructed that "[w]hile this Court does not adopt *Daubert,* we find the proper analysis for determining admissibility of scientific evidence is now under the SCRE." *Council,* 335 S.C. at 20, 515 S.E.2d at 518.

▆▆▆▆ Rule 702, SCRE, articulates the guidelines for admissibility of expert testimony in South Carolina. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. There is no abuse of discretion as long as the witness has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common

knowledge. *State v. Henry,* 329 S.C. 266, 495 S.E.2d 463 (Ct.App.1997); *State v. Goode,* 305 S.C. 176, 406 S.E.2d 391 (Ct.App.1991). The test for qualification of an expert is a relative one that is dependent on the particular witness's reference to the subject. *Wilson v. Rivers,* 357 S.C. 447, 593 S.E.2d 603 (2004). For a court to find a witness competent to testify as an expert, the witness must be better qualified than the fact finder to form an opinion on the particular subject of the testimony. *Ellis,* 358 S.C. at 525, 595 S.E.2d at 825; *Mizell v. Glover,* 351 S.C. 392, 570 S.E.2d 176 (2002); *Crawford v. Henderson,* 356 S.C. 389, 589 S.E.2d 204 (Ct.App.2003); *see also Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997) ("To be considered competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.' "). An expert is not limited to any class of persons acting professionally. *Gooding,* 326 S.C. at 253, 487 S.E.2d at 598; *Thomas Sand Co. v. Colonial Pipeline Co.,* 349 S.C. 402, 563 S.E.2d 109 (Ct.App.2002). There is no exact requirement concerning how knowledge or skill must be acquired. *Honea v. Prior,* 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988).

The party offering the expert testimony has the burden of showing the witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. *State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689 (1996); *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993); *Henry,* 329 S.C. at 274, 495 S.E.2d at 466. Generally, however, defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not to its admissibility. *Id.; see also Brown v. Carolina Emergency Physicians, P.A.,* 348 S.C. 569, 580, 560 S.E.2d 624, 629 (Ct.App.2001) ("Any defect in the education or experience of an expert affects the weight and not the admissibility of the expert's testimony.").

The admissibility of scientific evidence is dependent on "the degree to which the trier of fact must accept, on faith, scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom."

*State v. Jones,* 273 S.C. 723, 731, 259 S.E.2d 120, 124 (1979) (*citing People v. Marx,* 54 Cal.App.3d 100, 126 Cal.Rptr. 350 (1975)). This standard is designed to prevent the fact finders from being misled by the aura of infallibility surrounding unproven scientific methods. *State v. Morgan,* 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997). In considering the admissibility of scientific evidence under the *Jones* standard, the court looks at several factors, including: (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures. *Council,* 335 S.C. at 19, 515 S.E.2d at 517 (*citing State v. Ford,* 301 S.C. 485, 392 S.E.2d 781 (1990)).

However, not all expert testimony is subject to a *Jones* analysis. *State v. Douglas,* 367 S.C. 498, 510, 626 S.E.2d 59, 65 (Ct.App.2006) (*citing State v. Whaley,* 305 S.C. 138, 406 S.E.2d 369 (1991)). In *Whaley,* the court distinguished an expert's testimony that explained certain human behaviors from " 'scientific' evidence, such as DNA test results, blood spatter interpretation, and bite mark comparisons." *Whaley,* 305 S.C. at 142, 406 S.E.2d at 371. The expert's testimony in *Whaley* was not based on a scientific technique, but on his knowledge, skill, experience, and training as a psychologist. The court emphasized: "[w]here the witness is a qualified psychologist who simply explains how certain aspects of every day experience shown by the record can affect human perception and memory, and through them, the accuracy of eyewitness identification, we see no reason to require a greater foundation." *Id.* at 142, 406 S.E.2d at 371–72. Therefore, "[i]f the expert's opinion does not fall within *Jones,* questions about the reliability of an expert's methods go only to the weight, but not admissibility, of the testimony." *Morgan,* 326 S.C. at 513, 485 S.E.2d at 118. A trial court's threshold inquiry is whether the expert's methods and techniques even fall within *Jones'* central purpose: to prevent the aura of infallibility which surrounds "scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom" from misleading the fact finders. *Id.* (*citing Jones,* 273 S.C. at 731, 259 S.E.2d at 124).

## B. Recognized Areas of Expertise in South Carolina

South Carolina recognizes many areas in which an expert "has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common knowledge." *Douglas*, 367 S.C. at 510–11, 626 S.E.2d at 65 (*quoting State v. Henry*, 329 S.C. 266, 273, 495 S.E.2d 463, 466 (Ct.App.1997) and *citing Fields v. Regional Med. Ctr. Orangeburg*, 363 S.C. 19, 609 S.E.2d 506 (2005); *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004); *Burroughs v. Worsham*, 352 S.C. 382, 574 S.E.2d 215 (Ct.App. 2002); *Means v. Gates*, 348 S.C. 161, 558 S.E.2d 921 (Ct.App. 2001); *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1997)).

The significance of expert testimony in assisting or guiding the trier of fact in criminal cases is well established. *See, e.g., Douglas*, 367 S.C. at 511, 626 S.E.2d at 66 (*citing State v. Ellis*, 345 S.C. 175, 547 S.E.2d 490 (2001)) (clarifying that while police officer may testify as expert in crime scene processing and fingerprint identification, he may not testify to ultimate issue as to whether defendant acted in self-defense); *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996) (upholding trial court's decision to allow forensic pathologist to testify, during sentencing, about the amount of pain victim suffered); *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991) (finding eyewitness identification expert qualified); *State v. Myers*, 301 S.C. 251, 391 S.E.2d 551 (1990) (allowing expert in blood spatter interpretation to testify).

South Carolina courts have repeatedly acknowledged dog handling as an area of expertise in the criminal context. "Testimony of a dog handler based upon his observation of a tracking dog may be properly admitted into evidence." *State v. Johnson*, 306 S.C. 119, 127, 410 S.E.2d 547, 552 (1991). A foundation for the admission of dog tracking evidence is sufficient if it provides evidence as to (1) the extent of the handler's experience and training; (2) the dog's characteristics of scent acuity and power to discriminate between human and other scents; and (3) the handler's assessment of the dog's reliability. *See State v. Childs*, 299 S.C. 471, 477,

385 S.E.2d 839, 843 (1989) (qualifying a bloodhound handler as an expert witness based on the handler's experience and the scent dog's ability and reliability); *see also State v. Jordan,* 258 S.C. 340, 346, 188 S.E.2d 780, 784 (1972) ("[A]ppellant concedes that the action of bloodhounds which were placed on the supposed track of the offender is admissible as evidence provided that the dogs are allowed to follow their instincts free and untrampled by their handlers."); *State v. Bostick,* 253 S.C. 205, 207–08, 169 S.E.2d 608, 609 (1969) (finding challenge to dog handler's testimony on bloodhounds' conduct on the ground it "violated appellant's right to be confronted by the witnesses against him" was without merit; the handler was the witness, not the dog.); *State v. Brown,* 103 S.C. 437, 88 S.E. 21, (1916) (instructing that the conduct of dogs is only a circumstance to be weighed with other circumstances).

## C. Other Jurisdictions

### 1. Admissibility of Dog Tracking Evidence

The North Carolina Supreme Court articulated the foundational requirements adopted in majority of jurisdictions for the admission of dog tracking evidence in *State v. Taylor,* 337 N.C. 597, 447 S.E.2d 360 (1994). The court announced evidence of bloodhounds' actions was admissible when:

> (1) they are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination; (2) ... they possess these qualities, and have been accustomed and trained to pursue the human track; (3) ... they have been found by experience reliable in such pursuit; [and] (4) ... they were put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification.

*Id.* at 609, 447 S.E.2d 360. Though foundational requirements vary somewhat among jurisdictions, an overwhelming number allow admission of dog tracking evidence in a criminal case to prove identity. *State v. Cole,* 695 A.2d 1180 (Me.1997); *accord Gavin v. State,* 891 So.2d 907 (Ala.Crim.App.2003); *Wilkie v. State,* 715 P.2d 1199 (Alaska Ct.App.1986); *State v. Coleman,* 122 Ariz. 130, 593 P.2d 684 (Ct.App.1978), *aff'd in part, reversed in part by State v. Coleman,* 122 Ariz. 99, 593 P.2d

653 (1979); *Fox v. State,* 156 Ark. 428, 246 S.W. 863 (1923); *People v. Malgren,* 139 Cal.App.3d 234, 188 Cal.Rptr. 569 (Cal.Ct.App.1983); *Brooks v. People,* 975 P.2d 1105 (Colo. 1999), *as modified on denial of reh'g,* (Apr. 12, 1999); *State v. Esposito,* 235 Conn. 802, 670 A.2d 301 (1996); *Cook v. State,* 374 A.2d 264 (Del.1977); *Starkes v. United States,* 427 A.2d 437 (D.C.1981); *McCray v. State,* 915 So.2d 239, (Fla.Dist.Ct. App.2005); *Bogan v. State,* 165 Ga.App. 851, 303 S.E.2d 48 (1983); *State v. Streeper,* 113 Idaho 662, 747 P.2d 71 (1987); *State v. Buller,* 517 N.W.2d 711 (Iowa 1994); *State v. Brown,* 266 Kan. 563, 973 P.2d 773 (1999); *Brummett v. Commonwealth,* 263 Ky. 460, 92 S.W.2d 787 (1936); *State v. King,* 144 La. 430, 80 So. 615 (1919); *Roberts v. State,* 298 Md. 261, 469 A.2d 442 (1983); *Com. v. Hill,* 147, 52 Mass.App.Ct. 147, 751 N.E.2d 446 (2001); *People v. Harper,* 43 Mich.App. 500, 204 N.W.2d 263 (1972); *McDuffie v. State,* 482 N.W.2d 234 (Minn. Ct.App.1992); *Byrom v. State,* 863 So.2d 836 (Miss.2003); *State v. Thomas,* 536 S.W.2d 529 (Mo.Ct.App.1976); *State v. Taylor,* 118 N.H. 855, 395 A.2d 505 (1978); *State v. Parton,* 251 N.J.Super. 230, 597 A.2d 1088 (App.Div.1991); *People v. Roraback,* 242 A.D.2d 400, 662 N.Y.S.2d 327 (N.Y.App.Div. 1997); *State v. Iverson,* 187 N.W.2d 1 (N.D.1971); *State v. Neeley,* 143 Ohio App.3d 606, 758 N.E.2d 745 (2001); *Buck v. State,* 77 Okla.Crim. 17, 138 P.2d 115 (1943); *State v. Harris,* 25 Or.App. 71, 547 P.2d 1394 (1976) *overruled on other grounds; Com. v. Patterson,* 392 Pa.Super. 331, 572 A.2d 1258 (1990); *State v. Shepherd,* 902 S.W.2d 895 (Tenn.1995); *Johnson v. State,* 673 S.W.2d 203 (Tex.App.1983); *State v. Bourassa,* 137 Vt. 62, 399 A.2d 507 (1979); *Pelletier v. Com.,* 42 Va.App. 406, 592 S.E.2d 382 (2004); *State v. Nicholas,* 34 Wash.App. 775, 663 P.2d 1356 (1983); *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996).

Most jurisdictions find a sufficient foundation for the admission of dogtracking evidence is established if (1) the evidence shows the dog was of a breed characterized by an acute power of scent; (2) the dog was trained to follow a trail by scent; (3) by experience the dog was found to be reliable; (4) the dog was placed on the trail where the defendant was known to have been within a reasonable time; and (5) the trail was not otherwise contaminated. *See* Jay M. Zitter, Annotation, *Evidence of Trailing by Dogs in Criminal Cases,* 81 A.L.R.5th

563 (2006). However, many jurisdictions regard dog tracking evidence alone as legally insufficient and require corroborating evidence to prove identification. *See, e.g., People v. Gonzales,* 218 Cal.App.3d 403, 267 Cal.Rptr. 138, 142 (1990) ("a conviction cannot rest on dog tracking evidence alone"); *People v. Stone,* 195 Mich.App. 600, 491 N.W.2d 628, 630 (1992) ("Tracking-dog evidence is admissible only after certain foundational requirements are met. In addition, there must be other corroborating evidence presented before identification based on tracking-dog evidence is sufficient to support a guilty verdict.") *State v. Loucks,* 98 Wash.2d 563, 656 P.2d 480, 482 (1983) ("The dangers inherent in the use of dog tracking evidence can only be alleviated by the presence of corroborating evidence identifying the accused as the perpetrator of the crime."). Additionally, a number of jurisdictions require the trial court to instruct the jury to view dog tracking evidence with caution. *See People v. Gangler,* 227 A.D.2d 946, 643 N.Y.S.2d 839, 840 (N.Y.App.Div.1996) ("[T]racking evidence is admissible on the issue of identity if the proper foundation is laid and if the jury is given cautionary instructions."); *accord Wilkie v. State,* 715 P.2d 1199, n. 3 (Alaska Ct.App.1986); *People v. McMillen,* 126 Mich.App. 211, 336 N.W.2d 895 (1983); *State v. Taylor,* 118 N.H. 855, 395 A.2d 505 (1978).

Several jurisdictions find dog tracking evidence inadmissible under any circumstances. *See People v. McDonald,* 322 Ill. App.3d 244, 255 Ill.Dec. 584, 749 N.E.2d 1066 (2001); *Brafford v. State,* 516 N.E.2d 45 (Ind.1987); *State v. Storm,* 125 Mont. 346, 238 P.2d 1161 (1951); *Brott v. State,* 70 Neb. 395, 97 N.W. 593 (1903). These courts object to dog tracking evidence on the following grounds: (1) the actions of the bloodhounds are unreliable; (2) the evidence constitutes hearsay; (3) the defendant is deprived of his constitutional right to confront the witnesses against him; (4) the defendant should not be placed in jeopardy by the actions of an animal; (5) a defendant cannot cross-examine the dogs; and (6) a jury might be awed by such testimony and give it much greater weight and importance than warranted. *People v. Centolella,* 61 Misc.2d 723, 305 N.Y.S.2d 279, 281–82 (N.Y.Co.Ct.1969). In response to these arguments, the *Centolella* court explained:

[S]uch evidence falls into the category of opinion evidence rather than hearsay ... the animals are not witnesses

against a defendant any more than is a microscope or a spectrograph ... these machines are not subject to cross-examination any more than the animal, and ... a person is no more placed in jeopardy by the action of an animal than he or she is by a breath analyzer or a blood test.

*Id.* The court added the alleged undue importance a jury might attribute to the animal evidence can be minimized by cautionary instructions from the trial judge. *Id.*

## 2. Scientific Evidence versus Experience–Based Knowledge

In applying standards for admissibility, a number of courts differentiate between a dog handler's expert opinion based on experience-based knowledge and an expert opinion based on scientific evidence that requires a *Daubert* analysis. The Virginia Appellate Court held empirical evidence provided by a K9 officer sufficiently established a dog's reliability without requiring evidence of a scientific basis for the dog's ability to track a scent. *Pelletier v. Com.,* 42 Va.App. 406, 592 S.E.2d 382, 388 (2004). The court emphasized: "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond common intelligence and ordinary experience." *Id.* For instance, "the typical police officer qualifies as an expert based on his experience with narcotics, not on his ability to explain the scientific theory behind his opinion." *Id.*

The Colorado Supreme Court ruled "dog scent trailing evidence was admissible" if foundational requirements were satisfied, and "neither the *Frye* nor *Daubert* standards of general acceptance or scientific reliability applied." *Brooks v. People,* 975 P.2d 1105, 1111 (Colo.1999). Distinguishing between scientific knowledge based on the scientific method and experience-based, specialized knowledge, the court declined to apply factors designed to ascertain scientific validity in analyzing dog tracking evidence. *Id.* at 1113. "[W]e hold that testimony pertaining to scent tracking by a trained police dog is not readily subjected to standards which were not designed with experience-based specialized knowledge in mind." *Id.* at 1115. The court further reasoned the proper analysis of

reliability in dog tracking cases was based on Rule 702 of the Colorado Rules of Evidence (CRE) admissibility standards.

In *State v. Bourassa*, 137 Vt. 62, 399 A.2d 507 (1979), the Vermont Supreme Court dismissed a defendant's contention that dog tracking testimony was inadmissible because the scientific principles underlying such testimony were not established in the record. The court held evidence in the record was sufficient to find that a "well trained dog, supervised by an experienced handler and working under reasonable conditions, is capable of trailing a human being accurately." *Id.* at 510. Agreeing with the majority of jurisdictions, the court concluded the foundation sufficiently established that: (1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate that the accused had been; and (4) the trail had not become so stale or contaminated that it was beyond the dog's tracking capabilities. *Id.* at 511; *accord Reisch v. State*, 628 A.2d 84 (Del.1993) (deciding scientific testing not required to support evidence obtained by a dog if foundational requirements are met); *People v. Roraback*, 242 A.D.2d 400, 662 N.Y.S.2d 327 (N.Y.App.Div.1997) (holding the use of a trained dog is an investigative rather than scientific procedure); *Winston v. State*, 78 S.W.3d 522, 526 (Tex.Ct.App.2002) (finding interpretation of a dog's reaction to a scent lineup is based upon training and experience, and not on scientific methodology).

### D. The Extant Factual Record

The underlying rationale in *Pelletier*, *Brooks*, and *Bourassa* comports with our Supreme Court's analysis in *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991). The *Whaley* court's distinction between scientific evidence requiring a *Jones* analysis and expert testimony based on specialized knowledge and experience is equally applicable in the instant case.

Gunter's testimony established the proper foundation under *State v. Childs*, 299 S.C. 471, 477, 385 S.E.2d 839, 843 (1989) for admitting his opinion as to the reliability of dog tracking evidence. The officer had been with the Columbia Police Department for nearly fourteen years, working as a K9 handler and trainer. He had attained the rank of Senior Master

K9 Handler and assisted with the training of other K9 handlers and dogs in the department. Initially, Gunter trained with the Columbia Police Department in 1991. He holds a membership in the American Association of K9 Trainers and maintains his certification by attending week-long training sessions annually. Additionally, while his dog, Aurie, was in service, he trained weekly with the K9 unit of the Columbia Police Department. Gunter's partnership with Aurie lasted over seven years, the entire duration of the dog's career. During that time the team engaged in approximately 750 tracking excursions.

Gunter opined that Aurie was "very reliable." The dog was a German shepherd, who had descended from a bloodline of known police and military working dogs. He was certified in tracking, article searches, building searches, protection, and obedience. However, Gunter emphasized Aurie's strongest skill was tracking people.

White advanced his objection to the admission of the dog tracking evidence on the ground it was not scientifically reliable and did not meet the standards set forth in *State v. Jones,* 273 S.C. 723, 259 S.E.2d 120, (1979) concerning scientific evidence. Addressing White's challenge outside of the jury's presence, the trial judge explained:

> The Court: Well, you know, not all expert testimony deals with scientific evidence.
>
> White's Counsel: Yes, sir. We do understand but we do feel that if they are using it, they are qualifying his as an expert if he—the evidence should meet the standards of scientific evidence, your honor.
>
> The Court: Well, even if it's not a scientific evidence that they are offering?
>
> White's Counsel: Your Honor, any evidence he is offering as an expert—
>
> The Court: Well, expert is scientific, technical, or other specialized knowledge. Doesn't have to be scientific or technical.

Accordingly, the trial court ruled Gunter could offer his opinion testimony as to the reliability of what tracking dogs do provided the State laid the proper foundation. Based on testimony about the extent of Gunter's training and experi-

ence, Aurie's acuity and skill in tracking human scent, and Gunter's assessment of Aurie's reliability, the trial court instructed the jury:

> I'm going to find the officer qualified as an expert in the field of K9 tracking and handling with respect to his dog and the dogs in general. Ladies and gentlemen, if scientific, technical, or other specialized knowledge will assist you, the trier of fact, in understanding any issue that is—any fact that's in issue or any evidence that may be an issue, then a person who is qualified by virtue of his or her knowledge, skill, experience, training or education may be qualified as an expert in that particular field.

> I'm going to find the officer to be qualified as I said in the area of animal or dog tracking and handling, and as such he can offer opinions in his area of expertise.

> Now, you are to give his testimony such weight and credibility as you deem appropriate as you will with any and all witnesses that will testify in this trial.

Gunter's testimony verified he had acquired, by training and experience, such knowledge and skill in the area of dog handling and tracking that rendered him better qualified than the jury to form an opinion on the particular subject of dog tracking. Furthermore, Gunter's testimony was based on his specialized knowledge, skill, and experience in the use of a scent-tracking dog, rather than on the validity of dog tracking as a scientific procedure. The nature of Gunter's testimony is analogous to that offered by a typical police officer who qualifies as an expert based on his experience with narcotics, not on his ability to explain the scientific theory behind his opinion. As such, the evidence Gunter provided complies with Rule 702, SCRE by helping the jury understand the evidence or resolve a factual issue. As the *Whaley* court indicated, when a proper foundation is established, a *Jones* analysis is not warranted if expert testimony is based on specialized skill or knowledge rather than on scientific techniques. *See State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991). Furthermore, the trial court cautioned the jury that questions about the reliability of Gunter's methods go only to the weight of his testimony, not the admissibility. *See State v. Morgan*, 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997).

## E. Harmless Error

■■ Though we discern no error in the trial court's qualification of Gunter as an expert witness, the admission of his opinion testimony, if error, was harmless. Pursuant to Rule 103, SCRE, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."

■■ No definite rule of law governs finding an error harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Gillian*, 360 S.C. 433, 454–55, 602 S.E.2d 62, 73 (Ct.App.2004) (*citing State v. Reeves*, 301 S.C. 191, 391 S.E.2d 241 (1990); *State v. Mitchell*, 286 S.C. 572, 336 S.E.2d 150 (1985); *State v. Curry*, 370 S.C. 674, 636 S.E.2d 649 (Ct.App.2006); *State v. Pagan*, 357 S.C. 132, 591 S.E.2d 646 (Ct.App.2004)). Whether an error is harmless depends on the particular facts of each case, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

*State v. Mizzell*, 349 S.C. 326, 333, 563 S.E.2d 315, 318–19 (2002) (*quoting Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

■■■ "Harmless beyond a reasonable doubt" means the reviewing court can conclude the error did not contribute to the verdict beyond a reasonable doubt. *Mizzell*, 349 S.C. at 334, 563 S.E.2d at 319; *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834 (1992). "In determining whether an error is harmless, the reviewing court must review the entire record to determine what effect the error had on the verdict." *Mizzell*, 349 S.C. at 334, 563 S.E.2d at 319 (internal quotations omitted).

■■■ Error is harmless where it could not reasonably have affected the result of the trial. *In re Harvey*, 355 S.C. 53, 584 S.E.2d 893 (2003); *Mitchell*, 286 S.C. at 573, 336 S.E.2d at 151; *State v. Burton*, 326 S.C. 605, 486 S.E.2d 762

(Ct.App.1997). Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard*, 303 S.C. 172, 399 S.E.2d 595 (1991); *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). Thus, an insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached. *State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989); *Adams*, 354 S.C. at 381, 580 S.E.2d at 795; *see also State v. Primus*, 349 S.C. 576, 564 S.E.2d 103 (2002) (holding assistant solicitor's improper comment, during closing argument was harmless error, where evidence of guilt was overwhelming) *overruled on other grounds; State v. Kelley*, 319 S.C. 173, 460 S.E.2d 368 (1995) (noting that when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this court will not set aside conviction for insubstantial errors not affecting result).

Ample evidence linked White to the crimes charged. The testimonies of the victim, Gwen Anthony, and co-defendant, Anthony Morris, were corroborated by a surveillance videotape that recorded the crime as it unfolded. In addition, Roy Wiggins, the driver of the escape car, testified against White. Items taken from the crime scene were located in the escape vehicle. Officer Rouppasong witnessed a man carrying something in his hand and wearing dark jeans and a white shirt run from the Circle K parking lot. In pursuit, the officer lost sight of the man briefly and then came upon the escape car. The same man wearing the dark jeans and white shirt ran from the escape car toward the yard of the residence where White was eventually found. Gunter put his tracking dog on the scent at the location where the man exited the vehicle. The area in which the dog began tracking had been secured in order to preserve evidence. The dog's tracks led to the location where White was discovered. He appeared to be asleep and was clutching a gun in his hand. The gun matched Anthony's description of the weapon the robber carried, and both Morris and Wiggins positively identified it as the gun White had in his possession immediately prior to the robbery.

The evidentiary record reflects other substantial evidence of White's guilt without the inclusion of Gunter's testimony.

Consequently, the admission of the dog tracking evidence was cumulative and harmless.

## II. Newly Discovered Evidence

 White claims newly discovered evidence entitles him to a new trial. We disagree.

After White served his notice of appeal, co-defendant Anthony Morris issued a written statement retracting his trial testimony against White. Morris claimed he was not at the scene of the crime. In a motion to this court, White urged that we either remand the case for a new trial or remand the case to the trial court for a hearing on the purported new evidence. The State opposed and this court denied the motion. The State argues this court should not consider Morris' statement because it has not been raised to and ruled on by the trial court and is not properly before this court. We agree.

 Rule 29(b), SCRCrimP, governs post trial motions on after discovered evidence. A motion for a new trial based on after discovered evidence may not be made while the case is on appeal unless the appellate court exercises its discretionary authority, suspends the appeal, and grants leave to proceed in the circuit court. The lack of a ruling from the trial court presents nothing for this court's review.

Furthermore, a brief must reference the Record on Appeal to support the facts alleged. Rule 207(b)(4), SCACR. "The Record shall not, however, include matter which was not presented to the lower court or tribunal." Rule 210(c), SCACR. Morris' statement was not presented to the lower court and cannot be properly included in the Record on Appeal.

## CONCLUSION

 We rule that dog tracking evidence is recognized in South Carolina. We hold that dog tracking evidence is not required to meet the scientific evidence standard articulated in *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120, (1979). We conclude that dog tracking evidence is admissible provided the dog handler's knowledge, skill, experience, and training qualifies the handler in the area of dog handling and dog tracking.

In the case *sub judice*, Gunter's specialized knowledge, skill, experience, and training qualified him to offer his opinion in the area of dog handling and dog tracking. Luculently, the testimony of Gunter complies with expert testimony law extant in South Carolina.

There is no error in the trial court's qualification of Gunter as an expert witness and the admission of his opinion testimony. Assumptively concluding that error exists, the error is harmless beyond a reasonable doubt. There is overwhelming evidence in the trial record without the inclusion or consideration of Gunter's testimony to support the convictions of the Appellant.

The Appellant's claim as to the right to a new trial based on newly discovered evidence is dismissed based on procedural grounds.

Accordingly, the trial court's ruling is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.